**UNTIED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 15 2011 ★

LONG ISLAND OFFICE

| | |
|---|---|
| **JEFFERY L. JARVIS**<br><br>PLAINTIFF,<br><br>vs.<br><br>**NORTH AMERICAN GLOBEX FUND, L.P.; NORTHSTAR INTERNATIONAL GROUP, INC.; JAMES M. PEISTER; AND JOHN GEANTASIO.**<br><br>DEFENDANTS. | CASE NO. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**<br><br>*(Jury Demand Endorsed Hereon)* |

CV 11 0742

For his Complaint, Plaintiff Jeffery L. Jarvis ("Jeff Jarvis") alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**      SPATT, J.

1. Plaintiff Jeff Jarvis is an Ohio resident and resides at 5334 Brushy Fork Road, Batavia, OH 45103.

WALL, M.J.

2. On information and belief, Defendant North American Globex Fund, LP ("NAG") is a Nevada limited partnership doing business in New York and elsewhere.

3. On information and belief, Defendant Northstar International Group, Inc. ("Northstar") is a Nevada corporation doing business in New York and elsewhere.

4. On information and belief, Defendant James M. Peister ("Peister") is an individual who resides in New York who does business in the State of New York, and who, as the President, Chief Executive Officer, and controlling shareholder of Northstar (the General Partner of NAG), was authorized to act as an investment manager and trading manager and who has dominion and control over assets that have been entrusted to him by Plaintiff.

5. On information and belief, Defendant John Geantasio ("Geantasio") is an individual who resides in New Jersey, who does business in the State of New York, and who, as the Chief

Financial Officer of Northstar (the General Partner of NAG), was authorized to supervise Northstar's research team and assist in recommending NAG's asset allocations. In addition, Geantasio developed and implemented the system of internal accounting controls and was responsible for maintaining accountability.

6. At all times relevant herein, each defendant (including its/their employees, agents, and representatives) was the agent of the other Defendants, and each was acting at all pertinent times within the scope of its/their agency, with the knowledge and consent of the other Defendants.

7. Each Defendant designated herein is an agent, employee, servant of, or acting in concert with the other Defendants, or may be responsible in some manner to Plaintiff for the acts alleged in this action, and for resulting damages. Additionally, Defendants may therefore be liable on the basis of *respondeat superior*, and/or in indemnity or contribution to Plaintiff, and/or on the basis of other claims supported by the facts.

8. The General Partner or Manager of NAG was at relevant times Northstar.

9. Peister, Geantasio, and Northstar became Investment Managers of Plaintiff's assets that were invested in and entrusted to the NAG fund beginning in or about December, 2006.

10. NAG is the investment vehicle through which Peister, Geantasio, and Northstar have invested funds entrusted to them from the Plaintiff, so Defendants are fiduciaries to Plaintiff and owe fiduciary duties to the same.

11. There may be additional defendants whose true names, capacities, or involvement, whether individual, corporate, governmental or other business associations, are unknown to Plaintiff. Plaintiff requests leave to amend this Complaint to show such true names and capacities if and when the same have finally been determined, as those persons and/or entities may be

legally responsible in some manner for the events and happenings herein referred to, which proximately caused harms, as hereafter alleged. Discovery may also reveal additional claims to be pled by amendment hereto.

12. In accordance with Section 14.05 of the Second Amended and Restated Limited Partnership Agreement ("LPA"), the laws of the State of Nevada govern the Agreement at issue.

13. There is complete diversity between Plaintiff and Defendants, and the amount in controversy is an amount exceeding $75,000, exclusive of interest and costs. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

14. Personal jurisdiction is proper in this jurisdiction over Geantasio pursuant to N.Y. C.P.L.R. 302(a)(1) and (2) because Geantasio transacted business within New York and committed a tortious act within New York.

15. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Peister resides in New York, the Fund and Management Entities at issue conduct business within New York, and the resulting damages which give rise to this lawsuit occurred within New York.

16. Venue is also proper pursuant to the forum selection clause agreed to in Section 14.06 of the LPA.

## Facts

17. Upon information and belief, on or about December 31, 2002, Northstar (as General Partner), Peister, and certain limited partners entered into a written limited partnership agreement with NAG. This limited partnership was amended and restated on or around April 1, 2005 and again on or around November 1, 2006.

18. The services that Defendants would provide as principals and Managers for NAG under the LPA were described in a "Confidential Private Placement Memorandum" ("PPM") dated January, 2005, and exhibits thereto (the LPA and "Subscription Documents").

19. According to the PPM, the various investment decisions concerning investment funds placed in the NAG fund by Defendants could include, *inter alia*, investments in other funds, pools, and stock or other equity interests in energy, natural resources, real estate, including REITs, and material companies.

20. Among other things, the PPM for NAG provides in the "Overview" and "Management" sections that its "General Partner" is Northstar; that the General Partner administers the Fund's operations and manages and conducts the Fund's trading; that the Fund's investment decisions are conducted by Northstar as the "Manager"; that the CEO and President of the Manager is Peister; that the CFO is Geantasio, and that in addition to Peister, the Manager engages employees and agents to assist it in carrying out its functions.

21. The minimum investment under the PPM was $250,000, unless an investor met other criteria as determined by Northstar and Peister, in their discretion

22. In or about 2006, Plaintiff learned about investment opportunities through Defendants.

23. Defendants provided Plaintiff with written promotional materials, including the PPM, and entertained Plaintiff in efforts to entice Plaintiff to invest funds and plan assets in the NAG fund.

24. In the PPM "Overview," Defendants stated:

> In summary, the Partnership seeks to provide its Limited Partners with consistent above average returns combined with effective risk management. Although the strategy and asset allocation utilized by the Partnership is primarily centered on publicly traded companies, the General Partner intends to follow a flexible approach in order to place the Partnership in the best position to capitalize on opportunities in the financial markets.

25. Based on the representations of Defendants, Plaintiff accepted Defendants' offers of investment management services, and Plaintiff entrusted funds and assets to Defendants as Investment Managers and fiduciaries.

26. Plaintiff executed a series of documents enabling Defendants to obtain, and to exercise their discretion to manage, assets of the Plaintiff.

27. The assets included deposits of Plaintiff Jeff Jarvis, beginning in or about December, 2006, which were acknowledged and accepted by Defendants, totaling $250,000.00 in the NAG fund as of January 1, 2007.

28. As described in the PPM and LPA, every investor (including Plaintiff) whose investment is accepted by the Manager becomes a Limited Partner in NAG according to the terms of the LPA and automatically becomes a Partner of NAG, in accordance with the "Power of Attorney" provisions in Section 12.01 of the LPA.

29. Northstar (as General Partner), NAG, and Peister and Geantasio, as Northstar and NAG's agents, are, and at all relevant times, were, Plaintiff's attorneys-in-fact and fiduciaries, who among other things were irrevocably appointed with "power and authority to act in [Plaintiff's] name and… behalf to execute, acknowledge, swear to and file documents and instruments necessary or appropriate to the conduct of Partnership business[.]"

30. Beginning in December, 2007, Plaintiff made repeated requests to Defendants requesting redemption of his investments.

31. Defendants have repeatedly ignored these requests from Plaintiff.

32. Defendants have engaged in purposeful depletion of, and/or wrongful exercise of dominion and control over, the funds/assets of Plaintiff.

33. On or about February 3, 2011, the U.S. Community Future Trading Commission ("CFTC") found that Peister and Northstar defrauded community pool participants of NAG (including Plaintiff) by concealing trading losses, using participants' funds to make payments to other participants and for business and personal expenses, failing to register NAG as a community pool operator ("CPO") with CFTC, and failing to provide NAG participants with required disclosure forms.

34. In light of Peister and Northstar's fraudulent conduct, the CFTC sanctioned them in amount exceeding $11,000,000.

35. Plaintiff has been required to retain the services of attorneys to prosecute this action, and are entitled to be reimbursed for all reasonable attorneys' fees and costs incurred by Plaintiff.

### First Cause of Action
### (Breach of Fiduciary Duties)

36. Plaintiff incorporates by reference, as if fully reiterated herein, the allegations contained above.

37. During the period from and after 2006 through the present, Defendants have been responsible for the investment of the assets of the Plaintiff that were entrusted to Defendants.

38. Defendants, as Investment Managers of assets entrusted to them by Plaintiff, owe fiduciary duties to Plaintiff to administer the assets in accordance with the highest form of trust, fidelity, and confidence, at all times acting in the clients' best interests with the utmost good faith, utilizing the highest standards of fair and complete disclosure.

39. In addition, the "Conflict of Interest" section of the PPM binds Defendants to the following fiduciary duties: "*General*. The General Partner is accountable to the Partnership as a fiduciary and, consequently, must exercise good faith and integrity in handling the business of the Partnership."

40. From and after 2006, and at all material times, Defendants invested the assets of Plaintiff and were able to delete and substitute funds of plan assets/investments without seeking approval of Plaintiff, and Defendants exercised sole and final authority over all investment decisions made with respect to the assets of Plaintiff.

41. Beginning in or about December, 2007 and on multiple occasions thereafter, in accordance with the PPM, Plaintiff requested redemption from Defendants of all of the assets of Plaintiff in NAG.

42. Peister responded that the assets could not be redeemed immediately.

43. In or about April, 2009 Peister notified Plaintiff that the Manager will not distribute funds in response to redemption requests and instead intends to dissolve and wind down the funds.

44. Defendants have breached their fiduciary duties to Plaintiff by, among other things, failing to properly administer the assets of Plaintiff that had been entrusted to Defendants and by failing and refusing to redeem the assets, all of which are in violation of Defendants' fiduciary duties to Plaintiff.

45. Plaintiff is entitled to a return of the assets that have been wrongfully withheld by Defendants and are entitled to payment of their redemption requests made prior to January 1, 2008 on a first-in, first-out basis.

46. As a direct and proximate result of Defendants' actions as alleged, Plaintiff has suffered the harms as alleged, and will continue to sustain losses until Plaintiff's rightful benefits are restored to them by Defendants.

47. Defendants should be compelled to redeem all of the assets of Plaintiff, since the resulting losses suffered by the Plaintiff were caused by Defendants' breaches of the fiduciary duties that they owe to Plaintiff.

48. Defendants should be compelled to provide Plaintiff with a complete accounting of all investments of assets entrusted to them by Plaintiff.

49. Defendants should be barred from withdrawing any interests owned by or belonging to any Defendant until such time as all of Plaintiff's assets are redeemed.

50. Defendants should be compelled to immediately cease any and all payments of any fees or expenses from the Funds to any Defendant or related party thereto until such time as all of Plaintiff's assets are redeemed.

51. Defendants should be barred from any commingling of assets among the various funds under their control prior to the redemption of all assets to Plaintiff.

## Second Cause of Action
### (Breach of Contract)

52. Plaintiff incorporates by reference, as if fully reiterated herein, the allegations contained above.

53. The PPM and exhibits thereto provided to Plaintiff by Defendants constitutes a valid and binding contract between the parties.

54. Plaintiff has complied with the terms of the contract between the parties, as memorialized by the parties, and Plaintiff has either performed, or tendered his performance, thereunder.

55. Plaintiff has performed all conditions precedent and obligations incident to all the above-referenced contractual obligations or agreements.

56. Defendants and/or their authorized agents and/or affiliates have breached the contracts described herein by acting together in concert to prevent, obstruct, or stymie the return of assets to Plaintiff.

57. As a direct and proximate result of the Defendants' actions as alleged, Plaintiff has suffered the harms as alleged, and will continue to sustain losses until Plaintiff's rightful benefits are restored to him by Defendants.

58. Defendants should be compelled to redeem all of the assets of Plaintiff, since the resulting losses suffered by the Plaintiff were caused by Defendants' breaches of the contractual duties that they owe to Plaintiff. Plaintiff is entitled to payment of his redemption requests made prior to January 1, 2008 on a first-in, first-out basis.

59. Defendants should be compelled to provide Plaintiff with a complete accounting of all investments of assets entrusted to them by Plaintiff.

60. Defendants should be barred from withdrawing any interests owned by or belonging to any Defendant until such time as all of Plaintiff's assets are redeemed.

61. Defendants should be compelled to immediately cease any and all payments of any fees or expenses from the Funds to any Defendant or related party thereto until such time as all of Plaintiff's assets are redeemed.

62. Defendants should be barred from any commingling of assets among the various funds under their control prior to the redemption of all assets to Plaintiff.

### Third Cause of Action
### (Equitable Estoppel)

63. Plaintiff incorporates by reference, as if fully reiterated herein, the allegations contained above.

64. At all pertinent times, Defendants were aware of their obligations under the PPM to provide Plaintiff as an investor with proper redemption of Plaintiff's assets upon proper demand.

65. Plaintiff reasonably believed that Defendants intended to honor those obligations to Plaintiff.

66. Defendants have refused to honor Plaintiff's redemption requests.

67. Plaintiff relied to his detriment on the actions, representations, and promises of the Defendants, as alleged herein, and Defendants should be equitably estopped from their continued failure and refusal to honor Plaintiff's redemption requests for the return of Plaintiff's assets.

68. As a direct and proximate result of the Defendants' actions as alleged, Plaintiff has suffered the harms as alleged, and will continue to sustain losses until Plaintiff's rightful benefits are restored to him by Defendants.

69. Defendants should be compelled to redeem all of the assets of Plaintiff, since the resulting losses suffered by the Plaintiff were caused by Defendants' wrongful conduct towards Plaintiff. Plaintiff is entitled to payment of his redemption requests made prior to January 1, 2008 on a first-in, first-out basis.

70. Defendants should be compelled to provide Plaintiff with a complete accounting of all investments of assets entrusted to them by Plaintiff.

71. Defendants should be barred from withdrawing any interests owned by or belonging to any Defendant until such time as all of Plaintiff's assets are redeemed.

72. Defendants should be compelled to immediately cease any and all payments of any fees or expenses from the Funds to any Defendant or related party thereto until such time as all of Plaintiff's assets are redeemed.

73. Defendants should be barred from any commingling of assets among the various funds under their control prior to the redemption of all assets to Plaintiff.

### Fourth Cause of Action
### (Unjust Enrichment)

74. Plaintiff incorporates by reference, as if fully reiterated herein, the allegations contained above.

75. To Plaintiff's detriment, Defendants have been enriched by Plaintiff's investment of assets with Defendants without honoring the redemption requests as agreed.

76. It would be unjust for Defendants to retain the benefit of Plaintiff's assets without making good on its obligation to honor Plaintiff's redemption requests as agreed.

77. As a direct and proximate result of the Defendants' actions as alleged, Plaintiff has suffered the harms as alleged, and will continue to sustain losses until Plaintiff's rightful benefits are restored to him by Defendants.

78. Defendants should be compelled to redeem all of the assets of Plaintiff, since the resulting losses suffered by the Plaintiff were caused by Defendants' wrongful conduct towards Plaintiff. Plaintiff is entitled to payment of his redemption requests made prior to January 1, 2008 on a first in, first out basis.

79. Defendants should be compelled to provide Plaintiff with a complete accounting of all investments of assets entrusted to them by Plaintiff.

80. Defendants should be barred from withdrawing any interests owned by or belonging to any Defendant until such time as all of Plaintiff's assets are redeemed.

81. Defendants should be compelled to immediately cease any and all payments of any fees or expenses from the Funds to any Defendant or related party thereto until such time as all of Plaintiff's assets are redeemed.

82. Defendants should be barred from any commingling of assets among the various funds under their control prior to the redemption of all assets to Plaintiff.

## Fifth Cause of Action
(Action for Accounting)

83. Plaintiff incorporates by reference, as if fully reiterated herein, the allegations contained above.

84. Upon information and belief, Defendants have created or maintained accounting and financial records of the assets deposited with, and entrusted to, them from the Plaintiff and of the various investment activities relating to Fund investments.

85. Upon information and belief, included within those records are data that form the basis for calculating earnings on investments, and the like.

86. To date, Defendants have only provided wholly incomplete and inadequate information relating to investments from the Plaintiff.

87. Defendants are deliberately withholding information from Plaintiff.

88. Defendants, and each of them, should be ordered to provide all pertinent records to a forensic accountant to be retained by Plaintiff so that an independent accounting can be performed.

89. The equitable relief of an accounting is necessary to ensure the accuracy of all past and present calculations underlying the investments of Plaintiff over which Defendants have had discretionary dominion and control, which is necessary to afford complete relief to Plaintiff.

### Sixth Cause of Action
### (Contractual Breach of Covenant of Good Faith and Fair Dealing)

90. Plaintiff incorporates by reference, as if fully reiterated herein, the allegations contained above.

91. Contracting parties in Nevada have a duty not to act in bad faith or deal unfairly toward one another.

92. Plaintiff has performed all of his obligations under the contracts between Plaintiff and Defendants, as set forth herein.

93. Defendants have engaged in conduct lacking in good faith and for the purpose of depriving Plaintiff of the redemption of monies due to him, contrary to the parties' agreements, for the purpose of depriving Plaintiff of his rights and benefits under the various contracts.

94. As a direct and proximate result of the Defendants' actions as alleged, Plaintiff's justified expectations have been denied and Plaintiff has suffered the harms as alleged, and will continue to sustain losses until Plaintiff's rightful benefits are restored to him by Defendants.

95. Defendants should be compelled to redeem all of the assets of Plaintiff, since the resulting losses suffered by the Plaintiff were caused by Defendants' wrongful conduct towards Plaintiff. Plaintiff is entitled to payment of his redemption requests made prior to January 1, 2008 on a first-in, first-out basis.

96. Defendants should be compelled to provide Plaintiff with a complete accounting of all investments of assets entrusted to them by Plaintiff.

97. Defendants should be barred from withdrawing any interests owned by or belonging to any Defendant until such time as all of Plaintiff's assets are redeemed.

98. Defendants should be compelled to immediately cease any and all payments of any fees or expenses from the Fund to any Defendant or related party thereto until such time as all of Plaintiff's assets are redeemed.

99. Defendants should be barred from any commingling of assets among the various funds under their control prior to the redemption of all assets to Plaintiff.

## Seventh Cause of Action
### (Declaratory Judgment Under 28 U.S.C. § 2201)

100. Plaintiff incorporates by reference, as if fully reiterated herein, the allegations contained above.

101. This cause of action is for declaratory judgment under 28 U.S.C. § 2201.

102. This Court has jurisdiction to declare the legal rights, status, obligations and relations of the parties, pursuant to 28 U.S.C. § 2201.

103. This Court has the authority to construe a contract, including the agreements at issue in this case, pursuant to 28 U.S.C. § 2201.

104. Plaintiff is entitled to a declaration of the following:

   a. Defendants should be compelled to redeem all of the assets of Plaintiff, since the resulting losses suffered by Plaintiff were caused by Defendants' wrongful conduct towards Plaintiff. Plaintiff is entitled to payment of his redemption requests made prior to January 1, 2008 on a first in, first out basis;

   b. Defendants acted outside the scope of their authority and did not act in good faith, and they are therefore not entitled to indemnification from any investment fund identified herein for any loss, liability, damage, cost or expense (including attorneys' fees and accountants' fees) arising out of the claims in this action;

   c. Defendants should be barred from withdrawing any interests owned by or belonging to any Defendant until such time as all of Plaintiff's assets are redeemed;

   d. Defendants should be compelled to immediately cease any and all payments of any fees or expenses from the Funds to any Defendant or related party thereto until such time as all of Plaintiff's assets are redeemed; and

   e. Defendants should be barred from any commingling of assets among the various funds under their control prior to the redemption of all assets to Plaintiff.

### Eight Cause of Action
### (Fraud)

105. Plaintiff incorporates by reference, as if fully reiterated herein, the allegations contained above.

106. As discussed above, Defendants made numerous representations to Plaintiff as to investment opportunities with Defendants, including how funds or plan assets were invested and how the process structured by Defendants works.

107. Defendants also provided Plaintiff with written promotional materials, including the PPM, and entertained Plaintiff in efforts to entice Plaintiff to invest funds and plan assets in the NAG Fund.

108. Defendants' representations were material to persuading Plaintiff to invest with Defendants.

109. Upon information and belief, Defendants' representations were made with knowledge of their falsity and/or with utter disregard and recklessness as to truth or falsity and were made with the intent to mislead Plaintiff in reliance thereupon.

110. Further, the CFTC sanctioned Peister and Northstar over $11,000,000 for defrauding NAG participants, including Plaintiff, by concealing trading losses, using investor funds to pay other investors and for business and personal expenses, failing to register NAG as a CPO with the CFTC, and failing to provide NAG participants with required disclosure documents.

111. Defendants' fraudulently and deceptively induced Plaintiff to invest with Defendants. Such fraudulent acts caused damages to Plaintiff in excess of $250,000 to be proven at trial.

112. Plaintiff is also entitled to punitive damages in an amount to be determined at trial due to Defendants' fraudulent actions.

113. Plaintiff is further entitled to reimbursement of his legal expenses associated with Plaintiff's collection efforts due to Defendants' fraudulent and bad faith conduct.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A.   Judgment against Defendants in the amount of Plaintiff's damages plus interest at the legal rate and attorneys' fees, pursuant to the terms of the contract between Plaintiff and Defendants;

B.   Entry of a declaration confirming :

   i.   Defendants are compelled to redeem all of the assets of Plaintiff. Plaintiff should receive a priority in payment for any redemption requests made prior to January 1, 2008 on a first in, first out basis;

   ii.   Defendants are barred from withdrawing any interests owned by or belonging to any Defendant until such time as all of Plaintiff's assets are redeemed;

   iii.   Defendants are compelled to immediately cease any and all payments of any fees or expenses from the NAG Fund to any Defendant or related party thereto until such time as all of Plaintiff's assets are redeemed; and

   iv.   Defendants are barred from any commingling of assets among the various funds under their control prior to the redemption of all assets to Plaintiff;

C.   Entry of an order compelling Defendants to provide Plaintiff with a complete accounting of all investments of assets entrusted to them by Plaintiff;

D.   Entry of a preliminary injunction during the pendency of this action and a permanent injunction thereafter, restraining and enjoining Defendants and all those acting in concert or participation with Defendants from: (1) making any distributions from the NAG Fund without prior approval from the Court; (2) withdrawing any interests owned by or belonging to any Defendant until such time as all of Plaintiff's assets are redeemed; (3) making payments of any fees or expenses from the NAG Fund to any Defendant or related party thereto until such time as

all of Plaintiff's assets are redeemed; or (4) commingling assets among the various funds under their control prior to the redemption of all assets to Plaintiff; and

E.   Such other and further relief as this Court deems just and appropriate, including but not limited to Plaintiff's costs and attorneys fees associated with the filing of this lawsuit.

Dated: February 15, 2011

Respectfully submitted,

_____
Jeffrey B. Hulse, Esq. (JH 2095)
295 North Country Road
Sound Beach, New York 11789
Tel (631) 821-3667
Fax (631) 821-3669
jeffreyhulse@verizon.net

Attorney for JEFFERY L. JARVIS

Of Counsel:

Gregory A. Harrison (OH# 0029814)
Matthew S. Arend (OH# 0079688)
DINSMORE & SHOHL LLP
255 East Fifth Street
Suite 1900
Cincinnati, Ohio 45202
Tel: 513-977-8200
Fax: 513-977-8141
E-mail: greg.harrison@dinslaw.com
          matthew.arend@dinslaw.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury ~~on all issues~~ so triable.

_____