UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------ x

JEFFREY L. JARVIS,

        Plaintiff,

  - against -

NORTH AMERICAN GLOBEX FUND, L.P.;
NORTHSTAR INTERNATIONAL GROUP, INC.;
JAMES M. PEISTER; AND JOHN GEANTASIO,

        Defendants.

------------------------------------------ X

 

**DEFENDANT JOHN GEANTASIO'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

 

Of Counsel:
Sophia Ree
Anna Kornikova

LANDMAN CORSI BALLAINE & FORD P.C.
Attorneys for Defendant John Geantasio
120 Broadway, 27th Floor
New York, New York 10271
(212) 238-4800

**TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... i

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.     Standard on a Motion to Dismiss ............................................................................ 2

II.    Choice of Law .......................................................................................................... 3

III.   Claims Based on Contractual Theories of Recovery Must Fail
       Because Mr. Geantasio Did Not Have a Contract with the Plaintiff .......................... 5

       A.   Breach-of-Contract Claim (Second Cause of Action) ................................... 6

       B.   Contractual Breach of Covenant of Good Faith and Fair
            Dealing (Sixth Cause of Action) ................................................................... 8

       C.   Unjust Enrichment (Fourth Cause of Action) ............................................... 9

IV.    Plaintiff Failed to State a Claim for Breach of Fiduciary Duties
       (First Cause of Action) ........................................................................................... 11

       A.   Plaintiff's Breach-of-Fiduciary-Duty Claim is Time-Barred ........................ 11

       B.   Plaintiff's Claim is Derivative In Nature and Fails to Comply
            with the NULPA ............................................................................................ 13

            1)   Plaintiff Does Not Have a Direct Claim for Breach
                 of Fiduciary Duty again Mr. Geantasio ............................................ 14

            2)   The NULPA Bars the Plainitff's Derivative Claim ........................... 16

V.     Plaintiff Has Failed to State a Fraud Claim Against Mr. Geantasio
       (Eighth Cause of Action) ........................................................................................ 17

VI.    Other Causes of Action Should be Dismissed as Insufficiently Pled ....................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009)...................................................................................................2, 3, 22

*ATSI Commc'ns. Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007)....................................................................................................18

*Bakalar v. Vavra,*
    619 F.3d 136 (2d Cir. 2010)...................................................................................................3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 554 (2007)............................................................................................................2, 3

*Booking v. Gen. Star Mgmt. Co.,*
    254 F.3d 414 (2d Cir. 2001)................................................................................................3, 4

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004)...................................................................................................9

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,*
    98 F.3d 13 (2d Cir. 1996)................................................................................................18, 20

*Bulbman, Inc. v. Nev. Bell,*
    108 Nev. 105 (Nev. 1992)....................................................................................................18

*Cantor Fitzgerald Inc. v. Lutnick,*
    313 F.3d 704 (2d Cir. 2002).............................................................................................11, 12

*Ciccone v. Hersh,*
    320 Fed. Appx. 48 (2d Cir. 2009)........................................................................................13

*Cohen v. Lamko, Inc.,*
    462 N.E.2d 407 (Ohio 1984).................................................................................................19

*Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP,*
    15 N.Y.3d 264 (N.Y. 2010)...........................................................................................15, 20

*Cooper v. Parsky,*
    140 F.3d 433 (2d Cir. 1998).................................................................................................13

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.,*
    460 F.Supp.2d 1246 (D. Nev. 2006)...............................................................................15, 17

*Gennari v. Weichert Co. Realtors,*
691 A.2d 350 (N.J. 1997)...........................................................................................19

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.,*
449 F.3d 377 (2d Cir. 2006).........................................................................................4

*Gowen v. Tiltware LLC,*
No. 2:08-cv-01581-RCJ-RJJ, 2009 WL 1441653 (D. Nev. May 19, 2009)............14

*Hambleton v. R.G. Barry Corp.,*
465 N.E.2d 1298 (Ohio 1984)....................................................................................10

*In re Bayer Corp. Combination Aspirin Prods. Mktg, and Sales,*
701 F.Supp.2d 356 (E.D.N.Y. 2010) .........................................................................18

*In re Zyprexa Prods. Liab. Litig.,*
Nos. 04-MD-1596 (JBW), 06-CV-1338 (JBW), 2009 WL 1404978 (E.D.N.Y. May
19, 2009) ....................................................................................................................11

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,*
62 F.3d 69 (2d Cir. 1995)..........................................................................................3, 7

*Kabins Family LP v. Chain Consortium,*
No. 2:09-CV-01125-GMN-RJJ, 2010 WL 3001890 (D. Nev. July 27, 2010) .........9

*Kassner v. 2nd Ave. Delicatessen, Inc.,*
496 F.3d 229 (2d Cir. 2007)........................................................................................3

*Laguerre v. Nev. Sys. of Higher Educ.,*
No. 3:10-CV-452-ECR-VPC, 2010 WL 5186794 (D. Nev. Dec. 10, 2010) ............6

*LeMon v. Landers,*
81 Nev. 329 (Nev. 1965)............................................................................................14

*Morris v. Bank of Am. Nev.,*
110 Nev. 1274 (Nev. 1994).........................................................................................8

*Nev. State Bank v. Jamison Family P'ship,*
106 Nev. 792 (Nev. 1990)..........................................................................................12

*Oracle USA, Inc. v. Rimini Street, Inc.,*
No. 2:10-CV-00106-LRH-PAL, 2010 WL 3257933 (D. Nev. Aug. 13, 2010)........21

*Saltz v. First Frontier, LP,*
No. 10 Civ. 964 (LBS), 2010 WL 5298225 (S.D.N.Y. Dec. 23, 2010)....................18

*State, Univ. and Cmty. Coll. Sys. v. Sutton,*
120 Nev. 972 (Nev. 2004)...........................................................................................8

*Travelers Ins. Co. v. 633 Third Assoc.*,
   973 F.2d 82 (2d Cir. 1992) ....................................................................................21

*Tyco Intern. Ltd. v. Walsh*,
   -- F.Supp.2d --, No. 02-Civ.-4633 (DLC), 2010 WL 4118074 (S.D.N.Y. Oct. 20,
   2010) ...............................................................................................................11, 14

*Virgin Valley Water Dist. v. Vanguard Piping Syst. (Can.), Inc.*,
   No. 2:09-cv-00309-LRH-PAL, 2011 WL 167536 (D. Nev. Jan. 19, 2011) ............................20

*VRG Corp. v. GKN Realty Corp.*,
   641 A.2d 519 (N.J. 1994) ....................................................................................10

*Welsbach Elec. Corp. v. MasTec North Am., Inc.*,
   7 N.Y.3d 624 (N.Y. 2006) ...................................................................................4, 7

## STATUTES AND RULES

C.P.L.R. § 202 .....................................................................................................11

C.P.L.R. § 214(4) ................................................................................................13

Fed. R.Civ. P. 9(b) .......................................................................................17, 19

Fed. R.Civ. P. 12(b)(6) ........................................................................................2

Nev. Rev. Stat § 11.190(3)(d) .......................................................................12, 17

Nev. Rev. Stat. § 88.610 ...............................................................................16, 17

Nev. Rev. Stat. § 88.650 ....................................................................................14

## PRELIMINARY STATEMENT

Defendant John Geantasio respectfully submits this memorandum of law in support of his motion to dismiss the claims against him pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim.  A copy of the Complaint is attached to the Declaration of Sophia Ree ("Ree Decl.") as Exhibit A.

## STATEMENT OF FACTS

The plaintiff Jeffrey L. Jarvis brought this action as a limited partner in the North American Globex Fund, L.P. (the "Partnership"), seeking to recover his alleged investment in the Partnership.  (Compl. at 15–17.)  The named defendants are the Partnership, its general partner Northstar International Group, Inc. (the "General Partner"), the general partner's Chief Executive Officer James M. Peister ("Peister"), and John Geantasio, whom the plaintiff refers to as "the Chief Financial Officer" ("CFO") of the General Partner.  (*Id.* ¶¶ 3–5.)

The plaintiff alleges that in or about 2006, he began making contributions to the Partnership, and by January 1, 2007, he had $250,000.00 invested in it.  (*Id.* ¶¶ 22, 27.)  According to the Complaint, in December 2007, the plaintiff requested redemption of his investments, but his requests were "ignored."  (*Id.* ¶¶ 30–31.)  The Complaint further alleges that "[o]n or about February 3, 2011, the U.S. Community[sic] Future[sic] Trading Commission ('CFTC') found that *Peister and Northstar* defrauded community pool participants of [the Partnership] (including [p]laintiff) by concealing trading losses" and committed other violations.  (*Id.* ¶ 33 (emphasis added).)  The Complaint does not allege that the CFTC found that *Mr. Geantasio* was involved in these violations.

The plaintiff relies on "the Second Amended and Restated Limited Partnership Agreement" ("LPA"), the "Confidential Private Placement Memorandum" ("PPM"), and

"Subscription Documents" as the basis for this claims. (*E.g.*, *id.* ¶¶ 12, 15–24, 28–29.) On March 14, 2011, Mr. Geantasio moved this Court for an Order directing the plaintiff to produce the documents referenced in the Complaint. (Dkt. 7.) In response to the motion, the plaintiff produced copies of the alleged LPA, PPM, and Subscription Documents, (Dkt. 8), which are attached to the Declaration of Sophia Ree as Exhibits B, C, and D respectively.

For the purposes of this motion only and without waiving any rights, defenses or remedies available to Mr. Geantasio at law or equity, Mr. Geantasio assumes all non-conclusory factual allegations of the Complaint to be true and he does not challenge the authenticity, validity, applicability, and/or enforceability of the LPA, PPM, and Subscription Documents produced by the plaintiff. Should this action against Mr. Geantasio proceed, Mr. Geantasio reserves all of his rights to contest them, as well as any allegations in the Complaint.

## ARGUMENT

### I. Standard on a Motion to Dismiss

In order to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). If the

plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

On this motion, the Court is to accept as true all well-pleaded factual allegations in the complaint and draw all reasonable factual inferences in his favor. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Nonetheless, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

Furthermore, on a motion to dismiss, the Court may take into consideration documents on which the plaintiff relies and which are "integral" to the complaint, "without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (citation omitted). "In so doing, [the Court is] not constrained to accept the allegations of the complaint in respect of the construction of the Agreement." *Id.* Therefore, on this motion, the Court may consider the LPA, PPM, and the Subscription Documents, which form the basis of the plaintiff's Complaint. The Court, however, is not constrained by the plaintiff's interpretation of these documents.

## II.   <u>Choice of Law</u>

Where the jurisdiction of a federal court sitting in New York "is predicated on diversity of citizenship, New York's choice-of-law rules apply." *Bakalar v. Vavra*, 619 F.3d 136, 139 (2d Cir. 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Under these rules, the first step in any choice of law inquiry is to determine whether there is an 'actual conflict' between the laws invoked by the parties." *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001) (citation omitted). "If there is such a conflict, the court must then

classify the conflicting laws by subject matter with reference to New York law" as "substantive" or "procedural," and apply law other than that of New York only if it is "substantive." *Id.* at 420.

The Court should conduct a choice-of law inquiry for each claim separately, applying the relevant analysis framework. *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 383 (2d Cir. 2006) (citation and internal quotation marks omitted) ("Under New York law there are two different choice-of-law analyses, one for contract claims, another for tort claims"). Contract claims should be analyzed under the "center of gravity" or "grouping of contacts" choice-of-law theory, which requires the Court to consider a "spectrum of significant contacts," such as "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *Id.* (citations and internal quotation marks omitted). Tort claims should be analyzed within the framework of the "interest analysis," under which "the law of the jurisdiction having the greatest interest in the litigation will be applied and the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Id.* at 384 (internal quotation marks, ellipsis, and brackets omitted) (citing *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (N.Y. 1985)).

The plaintiff seeks to apply the Nevada law to the LPA on the basis of the Nevada choice-of-law provision contained in the LPA. (Compl. ¶ 12). The Complaint also invokes Nevada law in connection with the covenant of good faith arising out of the LPA. (*Id.* ¶ 91). "Generally, [New York] courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Welsbach Elec. Corp. v. MasTec North Am., Inc.*, 7 N.Y.3d 624, 629 (N.Y. 2006) (citation omitted). Recognizing that on this motion, the plaintiff is entitled to all favorable reasonable factual inferences, Mr. Geantasio,

for the purposes of this motion only, assumes that, based on the allegations in the Complaint, Nevada law applies both to the LPA and the covenant of good faith and fair dealing associated therewith. At this early, pre-discovery stage in litigation, however, Mr. Geantasio does not take a position as to what substantive law should govern each of the eight causes of action set forth in the Complaint in the event that the Court allows this action to proceed. As such, Mr. Geantasio reserves all of his rights to contest the plaintiff's proposition that the alleged agreements are governed by Nevada law.

### III. Claims Based on Contractual Theories of Recovery Must Fail Because Mr. Geantasio Did Not Have a Contract with the Plaintiff

Referring to all defendants collectively as "Defendants," the plaintiff alleges that they "have breached the contracts described [t]herein" (that is LPA, PPM, and Subscription Documents), when the "Defendants" prevented the plaintiff from redeeming his investment pursuant to these documents. (Compl. ¶¶ 12, 17–18, 52–62.) The plaintiff, however, fails to allege — as a threshold matter — that Mr. Geantasio was a party to these agreements. (*See id.*) As such, this claim and the claim of breach of the covenant of good faith and fair dealing associated with the agreements (*id.* ¶¶ 90–99) are improperly asserted against Mr. Geantasio and should be dismissed.

The plaintiff also claims that "Defendants," which technically includes Mr. Geantasio, "have been enriched by [the p]laintiff's investment of assets with Defendants without honoring the redemption requests as agreed." (*Id.* ¶ 75) However, the Complaint, as well as the agreements produced by the plaintiff, state that the plaintiff invested with the Partnership (*id.* ¶ 27), and not with Mr. Geantasio, and it is from the Partnership that the plaintiff is seeking to redeem his funds. Thus, the unjust enrichment claim against Mr. Geantasio is insufficiently pled and should be dismissed.

### A.    Breach-of-Contract Claim (Second Cause of Action)

It is hornbook law that a well-pled breach-of-contract claim has to allege that defendant is a party to the contract in question.  For example, in Nevada, "[t]o succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nev. Sys. of Higher Educ.*, No. 3:10-CV-452-ECR-VPC, 2010 WL 5186794, at * 3 (D. Nev. Dec. 10, 2010) (citing *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 134 (Nev. 1987)).

The plaintiff has produced the agreements which allegedly form the basis for his breach-of-contract claim, and they fail to identify Mr. Geantasio as a party to such agreements.  (*See* Ree Decl., Exs. B, C, D.)  The plaintiff alleges that "[t]he PPM and exhibits thereto . . . constitutes a valid and binding contract between the parties," which describes the "services that Defendants would provide as principals and Managers for [the Partnership] under the LPA." (Compl. ¶ 18, 53.)  However, the LPA identifies only the Partnership, the General Partner, and limited partners as the parties to the LPA.  (*See* Ree Decl., Ex. B.)  The Complaint does not allege that Mr. Geantasio was a partner of the Partnership, (*see* Compl.), and the LPA does not identify him as such (*see* Ree Decl., Ex. B).  The PPM supplements the LPA and also does not identify Mr. Geantasio as a party to the agreement.  (*See id.*)  The PPM states that "[a]s the CEO, president and controlling shareholder of the General Partner, James M. Peister controls all of the Partnership's operations and activities, including the management of its portfolio."  (*Id.*, Ex. C at 21).  The PPM further states that "the General Partner is responsible for the management of the Partnership . . ." and that "James M. Peister controls the General Partner." (*Id.* at 9.)  Therefore, the plain language of the agreements under which the plaintiff invested the $250,000.00 he is

now seeking to recover contradicts the plaintiff's suggestion that Mr. Geantasio had an agreement with the plaintiff with respect to this investment.

Furthermore, when plaintiff invested in the Partnership, he represented that: "NO OFFER OR SOLICIATION HAS BEEN MADE TO [THE PLAINTIFF] EXCEPT THROUGH THE [PPM AND LPA]. . . . [THE PLAINTIFF] IS NOT RELYING UPON ANY REPRESENTATION MADE BY *ANY PERSON* EXCEPT AS CONTAINED IN THE [PPM AND LPA]." (Ree Decl., Ex. D at 1 (capitalization in the original) (emphasis added).)  The plaintiff acknowledged that he "has relied solely . . . on the information contained [in the PPM and LPA]." (*Id.* at 2.)  This language precludes the plaintiff from arguing that he had any kind of agreement with Mr. Geantasio in connection with the plaintiff's investment in the Partnership.

The Complaint alleges that Mr. Geantasio was the CFO of the General Partner (Compl. ¶¶ 5, 20), and the copy of the PPM produced by the plaintiff, in the Section pertaining to the role of the General Partner, lists Mr. Geantasio as a "Chief Financial Officer." (Ree Decl., Ex. C at 21.)  This allegation, however, does not warrant a reasonable inference that Mr. Geantasio was a party to the LPA, PPM, and the Subscription Documents.  On this motion, the Court is "not constrained to accept the allegations of the complaint in respect of the construction" of the agreements, and should not accept as true the plaintiff's allegations concerning the import thereof. *Int'l Audiotext Network, Inc.,* 62 F.3d at 72.  "A basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent.  Where an agreement is clear and unambiguous, a court is not free to alter it and impose its personal notions of fairness." *Welsbach Elec. Corp.,* 7 N.Y.3d at 629 (citations omitted).  The plain language of the LPA, PPM, and Subscription Documents shows that Mr. Geantasio was not a party to those agreements, and thus, a breach-of-contract claim against him must fail.

**B.      Contractual Breach of Covenant of Good Faith and Fair Dealing (Sixth Cause of Action)**

The plaintiff alleges that "[c]ontracting parties in Nevada have a duty not to act in bad faith or deal unfairly toward one another" and that "Defendants" breached this duty when they "deprive[d] [the p]laintiff of the redemption of monies due to him." (Compl. ¶¶ 91, 93.)  Mr. Geantasio assumes for the purposes of this motion only (reserving all of his rights to contest this issue at a later stage in litigation) that, given all the favorable factual inferences afforded to the plaintiff at this stage, the New York "center of gravity" conflict-of-laws analysis would point to application of Nevada law to this claim.  Even under this assumption, the claim that Mr. Geantasio breached a contractual covenant must fail as insufficiently pled because the plaintiff has failed to show that the plaintiff and Mr. Geantasio had a contract.

As discussed above, the agreements produced by the plaintiff show that Mr. Geantasio did not contract with the plaintiff, and as such, could not have, as a matter of law, breached any contractual covenants.  "It is well settled in Nevada that every contract imposes upon the *contracting parties* the duty of good faith and fair dealing."  *State, Univ. and Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 989 (Nev. 2004) (citation and internal quotation marks omitted) (emphasis added).  More specifically, "[w]here *one party to a contract* deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing."  *Morris v. Bank of Am. Nev.*, 110 Nev. 1274, (Nev. 1994) (citation and internal quotation marks omitted) (emphasis added).  Here, the plain language of the agreements shows that, in connection with his investment in the Partnership, the plaintiff contracted with the General Partner, the Partnership, and limited partners, and not with Mr. Geantasio.  (Compl. ¶¶ 17–18, 23–24.)  The alleged breach of covenant of good faith

occurred when the plaintiff could not redeem his funds from the Partnership, and not from Mr. Geantasio. (*Id.* ¶ 93.) Therefore, the plaintiff's claim for breach of covenant of good faith is inappropriately asserted against Mr. Geantasio and should be dismissed as insufficiently pled.

### C.  Unjust Enrichment (Fourth Cause of Action)

The plaintiff alleges that "Defendants have been enriched by [the p]laintiff's investment of assets with Defendants without honoring the redemption requests as agreed." (Compl. ¶ 75.) Specifically, the plaintiff seeks to recover $250,000.00 which he invested in the Partnership and subsequently was unable to redeem from the Partnership. (*Id.* ¶¶ 27, 30.) Since the Complaint fails to allege that the plaintiff invested with Mr. Geantasio and that it was Mr. Geantasio who was enriched by the plaintiff's $250,000.00, the claim for unjust enrichment or "quasi contract" against Mr. Geantasio is legally insufficient and should be dismissed.

Generally, a plaintiff bringing a claim for unjust enrichment has to allege that (1) the plaintiff conferred a benefit upon the defendant and (2) that retention of such benefit would be unfair; the laws of all four states potentially implicated here — New York (the domicile of the General Partner, Peister, and the Partnership), Nevada (state of incorporation of the General Partner and formation of the Partnership), New Jersey (Mr. Geantasio's domicile), and Ohio (the plaintiff's domicile) — are not in conflict to the extent that they generally require these two elements. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) ("The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."); *Kabins Family LP v. Chain Consortium*, No. 2:09-CV-01125-GMN-RJJ, 2010 WL 3001890, at *6 (D. Nev. July 27, 2010) ("In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a benefit

conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment."); *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (stating that under Ohio law, "the elements of quasi-contract [are]: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')."); *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994) (stating that under New Jersey law, generally, "[t]o establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.").

The Complaint and agreements that it invokes fail to indicate that the plaintiff directly conferred a benefit upon Mr. Geantasio, retention of which would be unfair. Instead, the plaintiff alleges that he invested in the *Partnership* and that the *Partnership,* and not Mr. Geantasio (whether he in fact was the General Partner's CFO or not), retained the plaintiff's funds by refusing the plaintiff's redemption requests. (Compl. ¶¶ 17–18, 23–24.) The plaintiff's investment in the Partnership is governed by the LPA, PPM, and Subscription Documents (*id.* ¶¶ 23, 28), to which Mr. Geantasio is not a party. Thus, the allegation that the "Defendants" were enriched by the plaintiff's $250,000.00 investment in the Partnership improperly includes Mr. Geantasio, and the claim for unjust enrichment against Mr. Geantasio should be dismissed as legally insufficient.

## IV.     Plaintiff Failed to State a Claim for Breach of Fiduciary Duties (First Cause of Action)

The Court should also dismiss the plaintiff's breach-of-fiduciary-duty claim against Mr. Geantasio because this claim is time-barred and precluded by the Nevada Uniform Limited Partnership Act.

### A.     Plaintiff's Breach-of-Fiduciary-Duty Claim is Time-Barred

The plaintiff's breach-of-fiduciary duty claim is subject to the Nevada statute of limitations. "When federal jurisdiction is based on diversity, as it is in this case . . . state substantive law must govern[, and] [a] state's rules providing for the start and length of the statute of limitations is substantive law." *Cantor Fitzgerald Inc. v. Lutnick,* 313 F.3d 704, 710 (2d Cir. 2002) (citations omitted). "Under New York's 'borrowing statute,' N.Y. C.P.L.R. § 202, a case filed by a non-resident plaintiff requires application of the shorter statute of limitations period, as well as all applicable tolling provisions, provided by either New York or the state where the cause of action accrued." *Id.* (footnote omitted); *see also In re Zyprexa Prods. Liab. Litig.*, Nos. 04-MD-1596 (JBW), 06-CV-1338 (JBW), 2009 WL 1404978, at *12 (E.D.N.Y. May 19, 2009) (discussing application of the choice-of-law analysis to state statutes of limitation in federal court). Furthermore, "[i]n cases involving the fiduciary duties of a foreign corporation's directors . . . New York courts typically will apply the [substantive] law of the state of incorporation under the 'internal affairs' doctrine. *Tyco Intern. Ltd. v. Walsh,* -- F.Supp.2d --, No. 02-Civ.-4633 (DLC), 2010 WL 4118074, at *12 (S.D.N.Y. Oct. 20, 2010) (citing *Hausman v. Buckley*, 299 F.2d 696, 703 (2d Cir.1962)).

Here, the plaintiff, an Ohio resident, (Compl. ¶ 1) alleges breach of fiduciary duty (*id.* ¶ 47) in connection with this investment in the Partnership formed under Nevada laws (*id.* ¶ 2), by its General Partner, a Nevada corporation, (*id.* ¶ 3) among other defendants. On the face of the

Complaint, Mr. Geantasio's only nexus with the alleged breach is that he was purportedly (1) the CFO of the General Partner (*id.* ¶ 20) and (2) an agent of the General Partner and the Partnership, (*id.* ¶ 29). As such, even if all reasonable factual inferences are drawn, any fiduciary duty that Mr. Geantasio could have breached in this context was that owed to the General Partner and the Partnership, both of which are Nevada entities. Thus, Nevada statute of limitations governs.

Under Nevada law, "[a] breach of fiduciary duty is fraud and, therefore, the three-year statute of limitation set forth in [the Nevada Revised Statutes] 11.190(3)(d) is applicable." *Nev. State Bank v. Jamison Family P'ship*, 106 Nev. 792, 799 (Nev. 1990) (citation omitted). In the context of applying the Nevada statute of limitations to a breach-of-fiduciary claim, the Second Circuit explained that "the statute of limitations begins to run when plaintiff[] [was] on '*inquiry notice*,' that is, when [he] actually 'discover[ed] or should have discovered all facts essential to [his] cause of action' through the exercise of '*reasonable diligence*.'" *Cantor Fitzgerald Inc.*, 313 F.3d at 710 (citations omitted) (emphasis added). As such, Nevada law imposes on the plaintiff a duty of reasonable diligence in discovering the claim, and "[w]here it is evident from the face of the complaint that a plaintiff cannot satisfy this burden, a court can decide as a matter of law whether plaintiff discovered or should have discovered the cause of action outside the limitations period." *Id.* at 712.

Here, the crux of the plaintiff's breach-of-fiduciary duty claim is that the defendants allegedly rejected the plaintiff's request for redemption of his funds. (*See* Compl. ¶¶ 36–51.) The plaintiff claims he made "repeated requests" for redemption of his funds "beginning in December 2007," which were "repeatedly ignored." (Compl. ¶¶ 30–31.) The fact that his "repeated" requests to redeem $250,000.00 were "ignored" put the plaintiff on notice of his claim for breach of fiduciary duty, which is established on the face of the Complaint. The

plaintiff, however, did not bring his claim until February 15, 2011 — more than four years after his initial request for redemption was "ignored." Since the plaintiff has known, or, at minimum, was on inquiry notice, about allegedly wrongful rejection of his request for more than three years, he is now barred from bringing his claim for fiduciary duty by the Nevada three-year statute of limitations.

The plaintiff's claim is also time-barred under the New York statute of limitations. "Ordinarily, under New York law, a claim for breach of fiduciary duty would be governed by a three-year limitations period if the action sought monetary relief but by a six-year period if the action sought equitable relief." *Cooper v. Parsky*, 140 F.3d 433, 440–41 (2d Cir. 1998) (citations omitted); *see also* N.Y. C.P.L.R. § 214(4); *Ciccone v. Hersh*, 320 Fed. Appx. 48, 50 (2d Cir. 2009) (summary order) ("The statute of limitations for a breach of fiduciary duty action seeking monetary damages is three years."). Here, the plaintiff is seeking to recover his investment in the Partnership, (Compl. at 15–17), and without possibility of eventual monetary recovery, his other claims would be meaningless. As such, the New York statute of limitations demands the same result that the breach-of-fiduciary duty against Mr. Geantasio be dismissed as time-barred.

**B.      Plaintiff's Claim is Derivative In Nature and Fails to Comply with the NULPA**

In the alternative, even if the plaintiff's breach-of-fiduciary-duty claim against Mr. Geantasio is not time-barred, it should nevertheless be dismissed for failure to state a cognizable claim.

### 1)   Plaintiff Does not Have a Direct Claim for Breach of Fiduciary Duty against Mr. Geantasio

The plaintiff has failed to plead sufficiently that Mr. Geantasio owed him a fiduciary duty. For the above stated reasons, under the New York "internal affairs" doctrine, the Partnership and his officers' fiduciary duties should be analyzed under Nevada law. *See Tyco Intern. Ltd.,* 2010 WL 4118074, at *12 (citing *Hausman,* 299 F.2d at 703). Under Nevada law, "[t]he internal affairs of a [Nevada] limited partnership . . . , including . . . obligations and liabilities of or chargeable to the partnership, are governed by the laws of [Nevada]." Nev. Rev. Stat. § 88.650. In Nevada, "[t]he elements for [the breach of fiduciary duty] require (1) the existence of a fiduciary relationship; (2) a breach of that duty; and (3) damages proximately caused by such a breach." *Gowen v. Tiltware LLC*, No. 2:08-cv-01581-RCJ-RJJ, 2009 WL 1441653, at *7 (D. Nev. May 19, 2009) (citation omitted). Generally, "[a]n agent . . . owes to the principal the highest duty of fidelity, loyalty and honesty in the performance of the duties by the agent on behalf of the principal." *LeMon v. Landers*, 81 Nev. 329, 332 (Nev. 1965).

Here, the plaintiff alleges that Mr. Geantasio was the CFO of the General Partner, (Compl. ¶¶ 5, 20), and an agent of the General Partner and the Partnership, (*id.* ¶ 29), but that does not give rise to a fiduciary duty owed to the plaintiff directly, as opposed to a duty owed to the Partnership. The Complaint states that the plaintiff "entrusted" his funds to the defendants (*id.* ¶ 10), but the specific allegations in the Complaint fail to establish that the plaintiff entrusted his funds to Mr. Geantasio. As such, Mr. Geantasio did not owe a fiduciary duty to the plaintiff directly.

Based on the factual allegations in the Complaint, any duty Mr. Geantasio owed was that to the Partnership or General Partner, and not to the plaintiff. An action to recover injuries suffered by the limited partnership is considered a derivative action, as it belongs to the

partnership. *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F.Supp.2d 1246, 1258–59 (D. Nev. 2006); *Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 272 (N.Y. 2010) (finding that where "[t]he only injury [the limited partner plaintiffs] seek to establish is the diminution in value of their limited partnership interests," such action is derivative). Thus, the plaintiff may not bring a direct action against Mr. Geantasio for breach of his duties owed to the Partnership or General Partner.

The plaintiff's reliance on Section 12.01 of the LPA to create Mr. Geantasio's fiduciary duty to the plaintiff is misplaced and misleading. The Complaint boldly claims that, under the LPA, Mr. Geantasio was "Plaintiff's attorney[]-in-fact and fiduciar[y], who among other things [was] irrevocably appointed with 'power and authority to act in [plaintiff's] name.'" (Compl. ¶ 29)(citing the LPA, Ree Decl., Ex. B at 30.) The cited Section of the LPA, however, is silent on such appointment of Mr. Geantasio as an attorney-in-fact and does not even mention Mr. Geantasio's name. (Ree Decl., Ex. B at 30–31.) Instead, this Section provides that "[e]ach Limited Partner hereby irrevocably constitutes and appoints the *General Partner* and its respective successors . . . as the attorney-in-fact for such Limited Partner." (*Id.* at 30) (emphasis added). Thus, the plain language of the LPA flatly contradicts the plaintiff's interpretation of it and the Court should disregard it.

The Complaint also claims that the PPM "binds Defendants [which technically includes Mr. Geantasio,] to the fiduciary duties" set forth in the "Conflicts of Interest" Section of the PPM. (Compl. ¶ 39). This Section, contrary to the plaintiff's misquotation of it, merely states that "The *General Partner* is accountable to the *Partnership* as a fiduciary." (Ree Decl., Ex. C at 38 (emphasis added).) As such, the PPM does not show that *Mr. Geantasio* is the plaintiff's fiduciary.

Moreover, the plain language of the agreements precludes the plaintiff from suggesting that Mr. Geantasio was appointed as the plaintiff's fiduciary. The LPA states that "[t]he business and affairs of the Partnership shall be managed *exclusively* by the General Partner. . .[, and t]he General Partner [has] sole discretion and authority to select investments." (Ree Decl., Ex. B at 3 (emphasis added).) Under the PPM, "[a]s the CEO, president and controlling shareholder of the General Partner, James M. Peister controls all of the Partnership's operations and activities, including the management of its portfolio." (Ree Decl., Ex. C at 21). Furthermore, the PPM provides that "the *General Partner* is responsible for the management of the Partnership." (*Id.* at 9 (emphasis added).)

Before the plaintiff invested his funds, he acknowledged that "no representations or warranties have been made to the [plaintiff] by the General Partner or the Partnership other than [those] set forth in the [PPM], the [LPA,] and [Subscription Documents]," (Ree Decl., Ex. D at 2), and "no assurances or guarantees have been made to [him] *by anyone* regarding whether the Partnership's investment objective will be realized or whether the Partnership's investment strategy will prove successful," (*Id.* at 2, 3 (emphasis added)). The plaintiff "has relied solely upon investigations made by [him, his] attorney and accountant and agents in making the decision to participate in the proposed offering." (*Id.* at 4.) As such, the plaintiff may not now claim that his investment in the Partnership and dealings with it and the General Partner imposed a fiduciary duty upon Mr. Geantasio.

## 2) **The NULPA Bars the Plaintiff's Derivative Claim**

In any event, the plaintiff is also precluded from bringing a derivative claim for breach of fiduciary duty against Mr. Geantasio. "[Section] 88.610 of the Nevada Revised Statutes explicitly circumscribes the ability of a limited partner to bring a derivative action on behalf of

the partnership." *G.K. Las Vegas Ltd. P'ship,* 460 F.Supp.2d at 1258–59.  It provides that "[a] limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor *if* general partners with authority to do so have *refused* to bring the action or if an effort to cause those general partners to bring the action is *not likely to succeed*."  Nev. Rev. Stat. § 88.610 (emphasis added).  Furthermore, "[i]n a derivative action, the complaint must set forth with particularity the effort of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort." *Id.* § 88.620.

Here, the Complaint is devoid of any allegations that set forth with particularity the plaintiff's effort to make a demand upon the General Partner.  (*See* Compl.)  The Complaint also fails to set forth, in compliance with the statute, the reasons as to why the plaintiff's demand on the General Partner would have been unlikely to succeed.  As such, this claim should be dismissed as insufficiently pled.

## V.     Plaintiff Has Failed to State a Fraud Claim Against Mr. Geantasio (Eighth Cause of Action)

As a threshold matter, the plaintiff's fraud claim, associated with the General Partner's refusal to allow the plaintiff to redeem his funds is precluded by the three-year Nevada statute of limitations, and thus, is time-barred.  Nev. Rev. Stat § 11.190(3)(d); *see also* Section (IV)(A).

Even if it is not time-barred, it also fails on the merits.  The plaintiff's allegations of fraud against Mr. Geantasio are conflated with allegations against other defendants and are not pled with particularity required under the Federal Rule of Civil Procedure 9(b).  "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  As such, "Rule 9(b) generally requires that a plaintiff [bringing an action for fraud] specify the *who, what, where, when and why of the alleged fraud*; specifying which statements were

fraudulent and why, who made the statements to whom, and when and where the statements were made." *In re Bayer Corp. Combination Aspirin Prods. Mktg, and Sales*, 701 F.Supp.2d 356, 366 (E.D.N.Y. 2010) (citation omitted) (emphasis added). "The complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Saltz v. First Frontier, LP*, No. 10 Civ. 964 (LBS), 2010 WL 5298225, at *3 (S.D.N.Y. Dec. 23, 2010) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)). This heightened pleading standard provides the defendant with notice of the suit, protects him from baseless charges, and gives sufficient information to frame a response. *ATSI Commc'ns. Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

The substantive law of the all four states possibly implicated here are not in conflict to the extent that they require the plaintiff, at minimum, to identify the material misrepresentations knowingly made by the defendant. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996) (stating that under New York law, to bring a claim for fraud, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, and (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."); *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 110–11 (Nev. 1992) ("A plaintiff has the burden of proving [the following] element[s] of fraud claim by clear and convincing evidence. . . 1. A false representation made by the defendant; 2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); 3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; 4. Plaintiff's justifiable reliance upon the misrepresentation; and 5. Damage to the plaintiff resulting from

such reliance."); *Gennari v. Weichert Co. Realtors,* 691 A.2d 350, 367 (N.J. 1997) (stating that in New Jersey, "[t]he five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."); *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984) (stating that in Ohio, the elements of fraud are "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.").

Here, the Complaint fails to set forth specifically the fraud allegations pertaining to Mr. Geantasio. Instead, the plaintiff generally alleges that the "Defendants" "fraudulently and deceptively induced Plaintiff to invest with Defendants" by allegedly making representations and providing promotional materials with knowledge of their "falsity." (Compl. ¶¶ 106-109, 111.) As such, the Complaint is devoid of the necessary factual allegations with respect to the claim against Mr. Geantasio — that is the "who, what, where, when and why" of Mr. Geantasio's alleged fraud upon the plaintiff, as opposed to other defendants' fraud. The Complaint refers to the sanctions that the U.S. Commodity Futures Trading Commission ("CFTC") imposed on the General Partner and Peister, but fails to allege that the CFTC sanctioned Mr. Geantasio. Rule 9(b) precludes such wholesale aggregation of fraud allegations, and as such, the fraud claim against Mr. Geantasio should be dismissed.

Furthermore, the plaintiff may not recover in tort for purely economic losses. *Bridgestone/Firestone, Inc.*, 98 F.3d at 20 (where the plaintiff is bringing a fraud and a breach of contract claims, "to maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract.") (citations omitted); *Virgin Valley Water Dist. v. Vanguard Piping Syst. (Can.), Inc.*, No. 2:09-cv-00309-LRH-PAL, 2011 WL 167536, at *2–3 (D. Nev. Jan. 19, 2011). Here, in seeking to enforce his right of redemption under the LPA and PPM, the plaintiff is seeking to enforce his contractual right. As such, the plaintiff's fraud claim, in addition to other insufficiencies, fails to allege fraud that was extraneous to the contract and should be dismissed.

In addition, the plaintiff is precluded from recovering punitive damages for fraud, (Compl. ¶ 112), by the out-of-pocket rule, under which "[i]n a fraud action, a plaintiff may recover only the actual pecuniary loss sustained as a direct result of the wrong." *Cont'l Cas. Co.*, 15 N.Y.3d at 271 ("Under this rule, the actual loss sustained as a direct result of fraud that induces an investment is the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain."). Therefore, the Court should dismiss this claim, or, at minimum, limit damages for this claim to those that arise out of a duty independent from any contractual duty and strike the plaintiff's demand for punitive damages from the Complaint.

## VI.   Other Causes of Action Should Be Dismissed as Insufficiently Pled

The plaintiff's causes of action for equitable estoppel, accounting, and declaratory judgment are precluded because the plaintiff has failed to establish that remedies at law are either

unavailable or inadequate. "Equitable relief is generally available where legal remedies are unavailable or inadequate." *Travelers Ins. Co. v. 633 Third Assoc.*, 973 F.2d 82, 86 (2d Cir. 1992). Here, the plaintiff seeks to equitably estop the "Defendants" from refusing his redemption request, withdrawing any funds from the Partnership, and paying any fees or expenses from the Fund, (Compl. ¶¶ 69, 71, 72), to compel them to produce the Partnership's financial and accounting records, (*id.* ¶¶ 83–89), and have the Court declare that the "Defendants" should be compelled to redeem the plaintiff's assets, (*id.* ¶¶ 100–04). These claims merely represent his re-packaged claims for breach of contract, breach of fiduciary duty, and fraud, since, in essence, the plaintiff ultimately seeks to recover his investment in the Partnership. Yet, the plaintiff has not alleged why legal remedies, such as payment of money, would not be adequate to compensate him for his alleged financial loss. Thus, his recycling of allegations pertaining to other claims is insufficient to support his equitable claims and they should be dismissed.

In any event, Mr. Geantasio is not a proper party against whom these claims could be asserted. The plaintiff asserts his claim for accounting of the Partnership's funds against all "Defendants," which technically includes Mr. Geantasio. (Compl. ¶¶ 83–89.) "An action for accounting . . . is a proceeding in equity for the purpose of obtaining a judicial settlement of the accounts of the parties in which proceeding the court will adjudicate the amount due, administer full relief and render complete justice." *Oracle USA, Inc. v. Rimini Street, Inc.*, No. 2:10-CV-00106-LRH-PAL, 2010 WL 3257933, at *6 (D. Nev. Aug. 13, 2010). Since the plaintiff invested his funds with the Partnership, and not with Mr. Geantasio, and it is the Partnership that allegedly has not returned the plaintiff's funds, the plaintiff's claim is that against the Partnership and the General Partner, and not against Mr. Geantasio. Similarly, the claim for equitable

estoppel asserted against the "Defendants" in aggregate, (Compl. ¶¶ 63–73), in essence seeks to estop the General Partner and the Partnership, and not Mr. Geantasio, from refusing to allow the plaintiff to redeem his funds.  As such, the allegations in the Complaint, on its face, do not support these claims against Mr. Geantasio, as distinguished from the other defendants.  The plaintiff has failed to meet his burden of alleging "more than a sheer possibility that [Mr. Geantasio] has acted unlawfully," *Iqbal*, 129 S.Ct. at 1949, and thus, the plaintiff's claims should be dismissed.

Dated:    New York, New York
          April 18, 2011

Respectfully submitted,

LANDMAN CORSI BALLAINE & FORD P.C.

By:    _____

SOPHIA REE
ANNA A. KORNIKOVA
Attorneys for Defendant
JOHN GEANTASIO
120 Broadway, 27th Floor
New York, New York 10271-0079
(212) 238-4800

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )


**REED KRISTOVICH**, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at NEW YORK, NEW YORK.

That on the 18th day of April, 2011, deponent served the within **DEFENDANT JOHN GEANTASIO'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

upon

> Jeffrey B. Hulse, Esq.
> Attorneys for Plaintiff
> 295 North Country Road
> Sound Beach, New York 11789
> (631) 821-3669

attorneys in this action, at the addresses designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States post office department within the State of New York.

_____
Reed Kristovich

Sworn to before me this
18th day of April, 2011

_____
        Notary

ELIZABETH G. LAND
Notary Public, State of New York
No. 02LA6193268
Qualified in New York County
Commission Expires Sept. 15, 2012

. . ::ODMA/PCDOCS/DOCSNY/516664/1